Titone, J.
(dissenting). The majority holds that "untranscribed plea minutes of a potential prosecution witness [which] have been ordered but not received by the prosecution” do not fall within the scope of the Rosario rule. Because I believe that this holding is inconsistent with the express language and spirit of CPL 240.45 (1), I respectfully dissent.
On March 7, 1986, one of defendant’s accomplices, Fernando Castro, pleaded guilty to conspiracy in exchange for his testimony against defendant at his upcoming trial for attempted murder. The prosecution did not inform defendant of this fact until March 20, the day before his trial began. At that time, the prosecutor told defendant’s counsel that Castro "might” testify at trial. During his opening statement, the prosecutor stated that Castro would testify. When defense counsel requested that the prosecution provide him with a copy of the plea minutes in order to effectively cross-examine Castro the People responded that the minutes were as yet untranscribed. The trial court, after noting that both the prosecution and the defense had equal access to the transcript, concluded that the prosecution had no obligation to provide defendant with the minutes under People v Rosario (9 NY2d 286).
Initially, the Rosario rule requiring the People to provide the defendant with a witness’ prior statements was a judicially created doctrine designed to enhance the fairness of *887 criminal proceedings. However, the Legislature subsequently enacted CPL 240.45 (1) (a), which provides: "After the jury has been sworn and before the prosecutor’s opening address * * * the prosecutor shall, subject to a protective order, make available to the defendant * * * [a]ny written or recorded statement, including any testimony before a grand jury * * * made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness’s testimony.” The majority apparently takes the position that this statute was merely a codification of the Rosario rule affording a defendant no greater rights than does our case law. However, the language and legislative history of CPL 240.45 (1) (a) compel a contrary conclusion.
CPL 240.45 (1) (a) explicitly requires that any written or recorded statement of a person whom the prosecutor intends to call as a witness be made available to the defendant after the jury is sworn and before the prosecutor’s opening address. On its face, the statute requires that the People provide defendant with a statement embodied in the plea minutes of an accomplice, where the People call the accomplice as a witness. The legislative history of CPL 240.45 indicates that it was designed to reduce the element of surprise, with its inherent unfairness, in criminal trials, as well as to broaden discovery. Indeed, the goal of this legislation was to expand discovery in criminal cases beyond that provided for in Rosario. * The statute demands fair play by both the prosecution and the defense, a goal that was not met here.
*888 Unlike the case where the defendant seeks the victim’s personal account of the crime (see, People v Reedy, 70 NY2d 826, 827), the People in this case were active participants in the accomplice’s plea. In contrast, the defendant was not a participant and absent a notification by the prosecution, had no way of knowing that a plea was taken. The result of the failure to provide the transcript under these circumstances was that the defendant was subjected to the surprise and unfairness that the Legislature sought to prohibit by enacting CPL 240.45.
The majority relies on the fact that, unlike statements filed with police agencies (People v Ranghelle, 69 NY2d 56, 64), and Grand Jury testimony (see, CPL 240.45 [1] [a]), the plea minutes here were not in the control of the People (see, People v Reedy, 70 NY2d 826, 827, supra; People v Jones, 70 NY2d 547, 550). The determinative factor, however, is whether the statement might have been of use to the defense (People v Ranghelle, supra, at 64; see also, People v Rosario, supra, at 289).
Here, the People failed to inform defendant that Castro would testify until after the trial actually commenced. They then advised defendant that the minutes of Castro’s plea had not been transcribed. Finally, the People placed the burden on defendant to obtain the minutes. This course of conduct effectively "sandbagged” defendant. The People’s resources would have made all of this unnecessary and it was incumbent upon them to provide defendant with a transcribed copy of Castro’s plea.
Accordingly, I would reverse and remit for a new trial.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacosa concur; Judge Titone dissents and votes to reverse in an opinion.
Order affirmed in a memorandum.

 The chief sponsor of the bill stated that the statute "expands criminal discovery provisions for both the defense and prosecution” (Bill Jacket, L 1979, ch 412, Mem of Senator Stafford). The memorandum approving the bill states that it provides "expanded discovery for both the defense and prosecution in criminal cases”, that "[t]he element of surprise in criminal trials and its inherent unfairness, will be reduced”, and that the provision was "developed together with the Senate and Assembly Codes Committees and the Office of Court Administration, in consultation with the Criminal Justice Section of the State Bar Association, and the State District Attorneys’ Association among others” (Bill Jacket, L 1979, ch 412, Governor’s Approval Mem, 1979 McKinney’s Session Laws of NY, at 1801). A letter submitted by the District Attorneys’ Association agreed that the bill represents "a reasonable and balanced step forward in broadening pre-trial discovery” (Bill Jacket, L 1979, ch 412). Finally, a further memorandum in support of the bill indicated that "[t]he enactment of this measure would have a significant impact upon the criminal justice process. Trials would become fairer as the element of surprise is reduced” (Bill Jacket, L 1979, ch 412, Mem of Office of Court Administration, at 4, 1979 McKinney’s Session Laws of NY, at 1891).